UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANA GOLDTHWAITE,<br><br>                              Plaintiff,<br><br>          v.<br><br>TOWN SPORTS INTERNATIONAL, LLC<br><br>                              Defendant. | Civil Action No.<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff Dana Goldthwaite ("Goldthwaite" or "Plaintiff") by and through her attorneys, by way of a Complaint against defendant Town Sports International, LLC ("TSI" or "Defendant"), alleges as follows:

## INTRODUCTION

1. Plaintiff brings this action against Defendant for age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. ("ADEA") and the New York State Human Rights Law, N.Y. Executive Law § 290, et seq. ("NYSHRL").

## JURISDICTION AND VENUE

2. This court has subject matter jurisdiction over the federal ADEA claim pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(4), and supplemental jurisdiction over the State law NYSHRL claim pursuant to 28 U.S.C. § 1367 in that it is so related to the federal ADEA claim that it forms part of the same case or controversy.

3. Jurisdiction over the federal ADEA claim is appropriate because Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") regarding the unlawful discrimination to which she was subjected by TSI.

4. On or about April 27, 2018, the EEOC issued a Notice of Right to Sue, which was mailed to and received by Plaintiff's legal counsel on May 1, 2018.

5. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

**PARTIES**

6. Plaintiff is a former employee of TSI who was fifty-six (56) years of age at the time of the termination of her employment.

7. Defendant TSI is one of the largest owners and operators of fitness clubs in the Northeast United States. It is a wholly-owned subsidiary of Town Sports International Holdings, Inc.

**ALLEGATIONS**

8. Plaintiff was hired by TSI in or about July 1989 as the General Manager ("GM") of its New York Sports Club ("NYSC") location in Great Neck, New York.

9. While Plaintiff was periodically transferred to other NYSC locations, such as the Oceanside, Garden City, East Meadow and Commack locations, she nonetheless returned to the Great Neck location sometime in or about 2005, where she worked as GM until her termination on November 20, 2017.

10. During the course of her employment, Plaintiff demonstrated herself to be an exceptional GM. She consistently met her sales quotas and, more importantly, always managed to maintain the profitability of her locations.

11. In addition, Plaintiff was well-liked and respected by her staff and customers.

12. At the time of her termination, Plaintiff was the longest serving GM in TSI's Long Island region (which includes 13 separate locations) and one of, if not the longest serving employee in the entire company.

13. At the time of her termination, Plaintiff was also the oldest GM in the Long Island region, and believed to be one of the oldest GMs under the NYSC banner.

14. Throughout the majority of Plaintiff's employment, TSI measured a particular NYSC location's overall performance as a function of new monthly membership sign-ups.

15. However, sometime in or about 2016, TSI implemented a new system, wherein a location's performance would now be evaluated by its "member net gain." Under this new system, new membership sign-ups would be compared to membership cancellations.

16. While each NYSC location would continue to have a monthly sales quota, the emphasized goal of each location was to ensure that new membership sign-ups exceeded membership cancellations each month. In other words, it was each location's ideal goal to have a monthly "membership net gain" above zero.

17. Shortly after the implementation of the new "member net gain" system, TSI instituted a new membership cancellation policy, increasing the amount of advanced

3

notice a member must give prior to cancelling his/her membership from thirty (30) to forty-five (45) days.

18. While initially a favorable change, the new member cancellation policy had the eventual converse effect of inflating membership cancellation numbers once the forty-five (45) day notice period had expired, thus presenting an inaccurate portrait of a location's performance under the new "member net-gain" system.

19. In or about September 2017, Business Manager Josh Levy (who became Plaintiff's supervisor in June 2017), provided Plaintiff with a written warning regarding her member net gain numbers from the previous months.

20. While Plaintiff's member net gain was only -4 in July (her location met its sales quota), that number decreased to -70 in August.

21. Mr. Levy provided Plaintiff with a follow-up warning in October 2017.

22. While Plaintiff's September member net-gain was -52, Plaintiff managed to meet her sales quota for October.

23. Plaintiff anticipated not only meeting her November sales quota, but also achieving a positive member net gain for that month.

24. However, before this came to fruition, on November 20, 2017 Mr. Levy informed Plaintiff that she was terminated, citing her low member net gains for the previous months as the purported reason.

25. Prior to her termination, and upon Mr. Levy's ascension to Marketing Manager for the Long Island region in June 2017, Plaintiff began noticing that her Great

4

Neck location was being treated in a disparate manner compared to the other Long Island locations (which coincidentally was the time period when Plaintiff's member net gain numbers began to decrease).

26. For instance, whereas it previously took only several days for reports of malfunctioning equipment to receive a response and repair, Plaintiff's reports of equipment issues at her location did not receive responses or repairs for several weeks.

27. In addition, the frequency in which Plaintiff's Great Neck location received company promotions to entice new membership sign ups greatly decreased, especially in comparison to the other Long Island locations.

28. Furthermore, in the beginning of August 2017, Mr. Levy instructed Plaintiff to terminate one of her two membership consultants, who was sixty (60) years old at the time.

29. Plaintiff was unable to hire a new membership consultant for several weeks, which substantially set her location back in its ability to sign up new members.

30. Mr. Levy also ordered Plaintiff to eliminate the 12-5 shift at the front desk, and instead have her and the membership consultants attend to the front desk during those hours (which, in turn, negatively impacted Plaintiff's ability to sign up new members).

31. Defendant's citing to Plaintiff's member net-gain as the basis for her termination was pretext for age discrimination in violation of the NYSHRL and ADEA.

32. Despite short-term issues in not meeting her sales quota or member net gain for several months, Plaintiff's NYSC location always turned a profit during this time (an accomplishment that many of the other Long Island locations could not claim), and her sales quota and member net gain numbers were by far *not* the lowest of the other thirteen (13) Long Island locations.

33. In actuality, the overall numbers for Plaintiff's location ranked in the middle of the pack, and despite the roadblocks Mr. Levy put in her way, Plaintiff's numbers got progressively better up to the date of her termination.

34. In contrast, a number of other Long Island locations (whose GMs are much younger than Plaintiff) had lower overall sales and member net game numbers, yet those GMs were not subject to the same level of scrutiny as Plaintiff.

35. It is also believed that the individual hired to replace Plaintiff is approximately twenty (20) years her junior.

## COUNT ONE

36. The preceding paragraphs are repeated herein as if set forth at length.

37. Plaintiff was fifty-six (56) years of age at the time of her termination, the oldest GM in TSI's Long Island region and believed to be one of the oldest GMs under the NYSC banner.

38. By virtue of the actions taken by Defendant, TSI unlawfully discriminated against Plaintiff in the workplace and by terminating her employment based upon her age in violation of the ADEA.

39. As a direct and proximate result of TSI's violations of the ADEA, Plaintiff has suffered, and continues to suffer great harm in the form of lost back pay, front pay, other past and future pecuniary losses and emotional pain and suffering.

WHEREFORE, Plaintiff Dana Goldthwaite demands the following relief against Town Sports International, LLC as follows:

    A.    Pecuniary damages, including back pay and front pay;

    B.    Compensatory damages, including pain and suffering, humiliation and emotional anguish;

    C.    Reinstatement;

    D.    Punitive damages;

    E.    Pre- and post-judgment interest and costs;

    F.    Reasonable attorneys' fees with enhancement; and

    G.    Such other and further relief as the Court deems just and fair.

## COUNT TWO

40. The preceding paragraphs are repeated herein as if set forth at length.

41. By virtue of the actions taken by Defendant, TSI unlawfully discriminated against Plaintiff in the workplace and by terminating her employment based upon her age in violation of the NYHRL.

42. As a direct and proximate result of TSI's violations of the ADEA, Plaintiff has suffered, and continues to suffer great harm in the form of lost back pay, front pay, other past and future pecuniary losses and emotional pain and suffering.

WHEREFORE, Plaintiff Dana Goldthwaite demands the following relief against Town Sports International, LLC as follows:

      A.      Pecuniary damages, including back pay and front pay;

      B.      Compensatory damages, including pain and suffering, humiliation and emotional anguish;

      C.      Reinstatement;

      D.      Punitive damages;

      E.      Pre- and post-judgment interest and costs;

      F.      Reasonable attorneys' fees with enhancement; and

      G.      Such other and further relief as the Court deems just and fair.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

                **Budd Larner, PC**
                Attorneys for Plaintiff

                By: /s/Joshua L. Weiner
                      Joshua L. Weiner, Esq. (JLW5875)
                      150 John F. Kennedy Pkwy
                      Short Hills, NJ 07070
                      jweiner@buddlarner.com
                      P: (973) 315-4499
                      F: (973) 455-0027

Dated: May 22, 2018